UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 17 Cr. 449-3 (KPF) |
| ANTHONY RODRIGUEZ, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Anthony Rodriguez, who is currently incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), has applied for compassionate release, in the form of immediate resentencing to a period of time served with a condition of home imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. #536, 543).  Mr. Rodriguez acknowledges that he has previously tested positive for the COVID-19 virus, and argues that the current conditions of his confinement, including in particular certain sanitation and public health issues, along with the possibility that he may have undisclosed physical harm and associated psychological trauma from the virus, warrants this substantial reduction in his sentence.  (Dkt. #543).  The Government opposes this motion on both procedural and substantive grounds.  (Dkt. #539, 545).  As set forth in the remainder of this Order, the Court denies Mr. Rodriguez's motion for compassionate release.[1]

---

[1] Mr. Rodriguez filed a similar motion before the Honorable Alison J. Nathan, who had sentenced him previously to a term of 108 months' imprisonment after his plea of guilty to two counts of possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1).  By Opinion and Order dated December 23, 2020, Judge Nathan denied Mr. Rodriguez's motion.  *See United States* v. *Rodriguez*, No. 16 Cr. 7 (AJN), 2020 WL 7640539, at *1 (S.D.N.Y. Dec. 23, 2020) ("*Rodriguez I*").  This Court cites to Judge Nathan's thoughtful decision throughout this Order.  In addition, the Court refers to

## BACKGROUND

The instant case is Mr. Rodriguez's second criminal case in this District. On November 13, 2015, he was charged in a criminal complaint with possessing ammunition that had traveled in interstate commerce after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The charge arose from allegations that Mr. Rodriguez had shot four times into a moving vehicle on October 26, 2015. (16 Cr. 7 Dkt. #1). A subsequent indictment, returned by the Grand Jury on January 5, 2016, charged Mr. Rodriguez with two counts of possession of ammunition by a felon, pertaining to both the October 26, 2015 shooting and a shooting incident that took place on July 22, 2014. (16 Cr. 7 Dkt. #5). Mr. Rodriguez pleaded guilty to both counts of the indictment before Judge Nathan on November 7, 2016 (16 Cr. 7 Dkt. #23, 24), and was sentenced on May 25, 2017, principally to concurrent terms of 108 months' imprisonment (16 Cr. 7 Dkt. #33).

Mr. Rodriguez was identified in a separate investigation as being a member of the Hooly Gang, a drug trafficking organization that operated in the vicinity of Leggett Avenue and Fox Street in the South Bronx, and that was believed to be responsible for an uptick in violence in that area, including several murders, between 2009 and 2017. (Dkt. #441 (Revised Final Presentence Report ("PSR")) ¶¶ 9-10). Mr. Rodriguez both sold crack cocaine and possessed firearms on behalf of the Hooly Gang. (*Id.* at ¶ 15). On

---

several docket entries from that case, which entries are cited using the convention "16 Cr. 7 Dkt. #[ ]."

February 7, 2018, Mr. Rodriguez and twenty-four co-defendants were charged in a superseding indictment (the "S1 Indictment" (Dkt. #23)) with conspiring to distribute, and to possess with the intent to distribute, crack cocaine, heroin, marijuana, and oxycodone.

On December 18, 2018, Mr. Rodriguez pleaded guilty to a lesser-included offense of Count One of the S1 Indictment, which offense specified a five-year mandatory minimum term of imprisonment. (PSR ¶¶ 4-5; Dkt. #325 (plea transcript)). Mr. Rodriguez pleaded guilty pursuant to a plea agreement with the Government in which, among other things, he waived his right to appeal or to file a collateral challenge to any sentence of imprisonment within or below the stipulated range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 60 to 71 months' imprisonment. (PSR ¶ 5).

At Mr. Rodriguez's sentencing on May 6, 2019, a key issue was the degree to which this Court's sentence would run concurrently with, or consecutively to, the sentence that had previously been imposed by Judge Nathan. (*See, e.g.*, Dkt. #460 (sentencing transcript ("Sent. Tr.")) at 12:24-14:8, 19:25-20:25, 24:1-26:4). After hearing from counsel for both sides and from Mr. Rodriguez, the Court determined to impose a sentence that was almost fully concurrent with that imposed by Judge Nathan:

> We've been talking about the degree to which this case and the case before Judge Nathan overlapped, and I agree with the government in this respect, which is that there's not complete co-extensiveness. The cases aren't identical. Judge Nathan didn't have knowledge of the drug dealing. She didn't have knowledge of the gang participation. It wasn't specifically accounted for in her sentence. And while the sentence was significant, it did

3

> not fully capture all of the conduct, including all of the damages that were visited by the defendant and his co-conspirators on the Leggett Avenue neighborhood in the Bronx.
>
> Now defense counsel suggested that it might not have made a difference to what Judge Nathan actually imposed as a sentence, and I've been asking a different question while I've been in the robing room, which is, how much more, if any, additional jail time is needed to promote or to vindicate all of the purposes of sentencing. And I've decided that some additional jail time is needed. So then I tried to figure out how best to achieve that. ...
>
> ***
>
> I am imposing a term of 60 months' imprisonment of which 48 months is to be concurrent with what is left on Judge Nathan's case. So there are 12 additional months that I am imposing on this case.

(Sent. Tr. 34:14-35:18; *see also* Dkt. #440 (judgment)).

Mr. Rodriguez filed a *pro se* application for compassionate release with the Warden of Fort Dix in April 2020, which application was then mailed to this Court. (*See* Dkt. #536 (referencing application)). The Court re-appointed Mr. Rodriguez's trial counsel to assist him with his application (Dkt. #536), and a counseled supplement was filed on December 5, 2020 (Dkt. #543). The Government filed opposition submissions on November 20, 2020 (Dkt. #539), and December 9, 2020 (Dkt. #545), raising both procedural and merits-based challenges.

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a

4

defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the

5

defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In a recent case, however, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020); *see also United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release."); *see generally United States* v. *Roney*, — F. App'x —, No. 20-1834, 2020 WL 6387844 (2d Cir. Nov. 2, 2020).[2] That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it will look to that provision for guidance. *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

---

[2] The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion. In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *United States* v. *Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

Even if a court determines that "extraordinary and compelling reasons" exist, it must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Harris*, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020). In this regard, the Court again looks to, but does not consider itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).[3]

## DISCUSSION

The Government argues in the first instance that Mr. Rodriguez has not satisfied his administrative obligations, first because his April 7, 2020 application was considered by the BOP to be one for home confinement rather than compassionate release, and second because a subsequent administrative request on September 9, 2020, was not located by the BOP. This Court agrees with Judge Nathan that Mr. Rodriguez has satisfied his administrative requirements. *See Rodriguez I*, 2020 WL 7640539, at *2. It therefore proceeds to consider his application on the merits. The issue at hand is whether Mr. Rodriguez has identified "extraordinary and compelling reasons" warranting his

---

[3]  The § 3142(g) factors are largely duplicative of those in § 3553(a), but also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4).

7

release. The Court finds that even if he has, the factors set forth in § 3553(a) counsel strongly against compassionate release.

Mr. Rodriguez acknowledges that he tested positive for the COVID-19 in October 2020 and that he experienced a range of physical symptoms for which he received minimal medical attention. (Dkt. #543 at 13-14; *see also id.* at 13 ("After Mr. Rodriguez tested positive for the novel coronavirus, the treatment that BOP provided to him was woefully inadequate and makes it impossible to practice self-care.")). However, contrary to the Government's arguments that his prior infection places him in a better position vis-à-vis uninfected inmates (Dkt. #539 at 5-6), Mr. Rodriguez argues that the very real risk of re-exposure, coupled with the potential for long-term physical and psychological consequences, warrant compassionate release (Dkt. #543 at 14-20).

It is regrettable that Mr. Rodriguez is one of nearly 25 million Americans to have contracted the COVID-19 virus, *see* https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last accessed January 22, 2021), and the Court is appropriately concerned about (i) the medical treatment described by Mr. Rodriguez in his submission, (ii) his current conditions of confinement at FCI Fort Dix, and (iii) a recent spike in COVID-19 cases at that facility. The Court recognizes that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at \*2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*, No. 16 Cr. 576 (JFK), 2020

8

WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases). And it takes seriously Judge Nathan's conclusion that:

> The current situation at FCI Fort Dix is particularly concerning. Conditions at the facility appear to present serious risks both of spread of the virus and of inadequate medical care for those who have been infected. The Government does not dispute Mr. Rodriguez's account that inmates have been provided only a single disposable surgical mask since the beginning of the pandemic. *See* Rodriguez Br. at 13. Nor does it dispute his claim that correctional officers often flout masking requirements, or that following his positive test result Mr. Rodriguez was offered no more medical care than Tylenol and bed rest. *See id.* at 13-14. Hundreds of inmates at the facility have tested positive within the past two months. The COVID-19 outbreak at FCI Fort Dix has also had serious effects on inmates' wellbeing apart from medical risks. The facility has prohibited all visitation and greatly restricted inmate movement. Declaration of Dr. Kimberly Kodger, Gov Br., Ex. A ¶ 19. Considering these factors, the Court joins those others that have held that the current COVID-19 situation in FCI Fort Dix may qualify as an extraordinary and compelling circumstance supporting compassionate release, even for an inmate who has already apparently recovered from COVID-19. *See, e.g.*, *United States* v. *Geraldo Vega*, No. 89-cr-0229 (JS), 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020).

*Rodriguez I*, 2020 WL 7640539, at *4. However, like Judge Nathan, this Court concludes that the § 3553(a) factors counsel against compassionate release here.

Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Mr. Rodriguez participated in two separate shooting incidents within

9

fifteen months, and within two years of his release from prison on a wholly different firearms charge. (PSR ¶¶ 69-70, 78-84). Mr. Rodriguez also played an important role in the charged conspiracy; in addition to distributing significant quantities of narcotics, he (unlike many other members of the conspiracy) used guns to further the conspiracy's objectives. (*Id.* at ¶¶ 15, 19, 50). The Court varied downwardly significantly at the time of Mr. Rodriguez's sentencing by running the majority of his sentence concurrently with that imposed by Judge Nathan; to reduce it further, even on the facts presented, would undermine the purposes of sentencing.[4]

## CONCLUSION

For the foregoing reasons, Defendant Anthony Rodriguez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.

SO ORDERED.

Dated:   January 25, 2021
         New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge

---

[4]   To the extent he has not done so already, Mr. Rodriguez can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.